585 A.2d 286

Kenneth R. POWELL

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.**

**No. 599, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Feb. 6, 1991.

Thomas Fortune Fay (Clower and Fay, P.C., on the brief), Washington, D.C., for appellant.

Stephen A. Markey (Miller, Markey and Hoffman, on the brief), Bladensburg, for appellee.

Before BISHOP, ROSALYN B. BELL and CATHELL, JJ.

CATHELL, Judge.

Appellant, Kenneth R. Powell, was injured in an automobile accident while driving his wife's Nissan. That car was covered by an insurance policy with $20,000/$40,000 uninsured motorist coverage. Mr. Powell also owned another Nissan, not involved in the accident, covered by a separate policy which provided $100,000/$300,000 uninsured motorists coverage.[1] Mr. and Mrs. Powell, as plaintiffs, filed suit against the driver of the other car and against State Farm Mutual Insurance Company, the insurer under both their policies. By way of a Motion for Partial Summary Judgment, both plaintiffs sought a declaration that the policy on the husband's vehicle provided coverage. The trial court (Perry, J.) held that the limit applicable to the present case was the $20,000/$40,000 coverage under the policy covering the vehicle involved in the accident—Mrs. Powell's automobile. As applicable to the issue now presented, the husband's policy contained the following language:

THERE IS NO COVERAGE:

    *     *     *     *     *     *

2. FOR *BODILY INJURY* TO *YOU* ... WHILE *OCCUPYING* ... A MOTOR VEHICLE OWNED BY *YOU*, YOUR SPOUSE OR ANY *RELATIVE*, and which is not insured under the liability coverage of this policy.

Appellant summarized his argument as follows:

1. *Exclusion in the Insurance Policy*

The exclusion contained in the appellant's policy contains two conditions which must both be fulfilled before the exclusion becomes effective. Since only one condition was fulfilled, the exclusion is inoperative.

2. *Applicable Statute*

---

**1.** The two policies contain identical language except as to the amount of coverage.

Even if the exclusion contained in the appellant's insurance policy is found to be operative because both conditions contained therein have been fulfilled, the exclusion is not one of the exclusions expressly authorized by the Maryland State Legislature and is therefore invalid as against public policy.

3. *Appellee's Cited Case—Howell v. Harleysville Mut. Ins.*

The case cited by the appellee as controlling, *Howell v. Harleysville Mut. Ins. Co.,* 305 Md. 435, 505 A.2d 109 (1986) is not applicable to the case before this Court.

# I

*Exclusion in the Insurance Policy*

The exclusion contained in the appellant's policy contains two conditions which must both be fulfilled before the exclusion becomes effective. Since only one condition was fulfilled, the exclusion is inoperative.

■ Appellant first argues that the portion of the policy exclusion quoted *supra* has not been met, asserting that "the mandatory Maryland coverage ... extends to any vehicle being driven by the appellant as a named insured." Because he is covered while driving any vehicle, he contends that any vehicle he drives is thus a vehicle insured under the liability coverage of his policy.

Md.Ann.Code art. 48A, § 538 (1979) offers definitions of both "Motor Vehicle" and "Named Insured" which, of course, are not synonymous. Section 539(a) provides that insurance benefits must cover the "Named Insured" injured in a motor vehicle accident, and explains that a policy must also include provisions requiring its benefits to be applicable to any other person "injured while occupying the insured motor vehicle ... or while using it with the express or implied permission of the named insured...." As we read the statute, the "insured motor vehicle" is the vehicle named in the policy. The statute requires coverage when the "insured motor vehicle" is involved in an accident irre-

spective of who is driving it. Additionally, the statute requires the policy to cover the "named insured" when involved in an accident involving any vehicle.

We note that the Court of Appeals has rejected technical construction when a statute or a policy fails to define words:

> By not defining these words in the statute, there is nothing to indicate the legislature "intended to express a technical meaning." *State Tax Commission v. Allied Mortgage Companies*, 175 Md. 357, 360, 2 A.2d 399, 400 (1938).
>
>     \*    \*    \*    \*    \*    \*
>
> A strained or unreasonable construction of the policy language should not be indulged in. In interpreting the language of insurance contracts, words are to be given their customary, normal menaing [sic].

*DeJarnette v. Federal Kemper Insurance Company*, 299 Md. 708, 717, 721, 475 A.2d 454 (1984). (Citations omitted.)

We said in *Schuler v. Erie Insurance Exchange*, 81 Md.App. 499, 505, 568 A.2d 873 (1990), that:

> The primary purpose in construing insurance contracts is to effectuate the intention of the parties. *U.S.F. & G. v. Nat. Pav. Co.*, 228 Md. 40, 178 A.2d 872 (1962). The language employed is to be afforded its ordinary and usually accepted meaning. *C. & H. Plumbing v. Employers Mut.*, 264 Md. 510, 287 A.2d 238 (1972). When the language is unambiguous, construction is within the province of the courts and Maryland has not adopted the rule that an insurance policy is to be most strongly construed against the insurer.

We do not believe the statute, by extending coverage to the insured when involved in any accident, enlarged the class of "insured motor vehicles" under policies of insurance. Thus, when the appellant's policy's language excludes coverage for a *vehicle* owned by the named insured or his spouse and which was not insured under the liability coverage of "this policy," it was referring to vehicles not

described in the policy of insurance at issue, such as the wife's Nissan. The clause provides that the uninsured motorist coverage under Mr. Powell's policy does not apply if he was occupying a motor vehicle owned by his wife that was not described as an insured vehicle in his policy. As we shall discuss later, we fail to see where such language contradicts the statute or is contrary to public policy.

Another factor to consider is whether, absent the "in any accident" language, Kenneth Powell's policy would have afforded coverage, had the wife's automobile been uninsured. The exclusionary language clearly states that if the named insured is occupying a motor vehicle owned by the insured or the insured's spouse, and that *motor vehicle* is not insured under the liability coverage of the policy, then the uninsured coverage does not apply. The liability provisions of the policy provide for coverage in respect to accidents resulting from the use of "your car." The policy defines "your car" as "the car or the vehicle described on the declarations page." The "Declarations Page" of the policy at issue describes the 1987 4 door Nissan owned by Kenneth Powell—not the car involved in the accident. By the language of the husband's policy, its uninsured motorist coverage would not apply had the wife's car been completely uninsured.

As we have said, we see no ambiguous language in the policy. To accept the interpretation of "insured vehicle" urged upon us by appellant would be to participate in an absurd result. *See Howell v. Harleysville Mut. Ins. Co.,* 305 Md. 435, 505 A.2d 109 (1986). We hold that the two conditions of the exclusion (that the appellant was occupying a motor vehicle owned by his spouse, *and* that that motor vehicle was not insured by appellant's policy) have been fully met and thus control, unless the exclusion is prohibited. We must therefore next determine whether the exclusion is void as contravening either the uninsured motorists (hereinafter UM) provisions of Md.Ann.Code art. 48A, § 541 (1979), or the public policy which that statute promotes.

II

*Applicable Statute*

Even if the exclusion contained in the appellant's insurance policy is found to be operative because both conditions contained therein have been fulfilled, the exclusion is not one of the exclusions expressly authorized by the Maryland State Legislature and is therefore invalid as against public policy.

■ The Court of Appeals in *State Farm Mutual Automobile Insurance Company v. Nationwide Mutual Insurance Company*, 307 Md. 631, 635–36, 516 A.2d 586 (1986), said:

"Beginning in 1972, however, the General Assembly substantially changed the public policy of this State with regard to motor vehicle insurance and reparations for damages caused by motor vehicle accidents." *Jennings* [*v. Government Emp. Ins. Co.*], 302 Md. [352] at 357–358, 488 A.2d [166] at 168 [1985]. That change, of course, was the mandating of compulsory automobile insurance with required minimum coverages....

\*     \*     \*     \*     \*     \*

These and related statutes were before us in *Jennings*. Judge Eldridge, for the Court, observed that "a clause in an insurance policy, which is contrary to 'the public policy of this State, as set forth in ... the Insurance Code' or other statue, is invalid and unenforceable." 302 Md. at 356, 488 A.2d at 168 (quoting *Guardian Life Ins. v. Ins. Comm'r*, 293 Md. 629, 643, 446 A.2d 1140 (1982)).

The Court of Appeals in *Jennings v. Government Employees Insurance Company*, 302 Md. 352, 356, 488 A.2d 166 (1985), opined: "It is settled that a clause in an insurance policy, which is contrary to 'the public policy of this State, as set forth in ... the Insurance Code' or other statute, is invalid and unenforceable." (Citations omitted.)

The question, then, is whether the exclusionary language of the instant policy is contrary to the public policy as set

forth in the applicable statute. We hold that it is not, and explain.

In *Guardian Life Insurance Company of America v. Insurance Commissioner of the State of Maryland,* 293 Md. 629, 642–43, 446 A.2d 1140 (1982), the Court of Appeals stated the rules that govern the construction of statutes:

> [S]tatutes should be construed with a view to the original intent and meaning of the legislature, bearing in mind the cause and necessity of the enactment, and that construction is to be applied which, accords with the actual intention of the makers. Similarly fundamental is the rule that where a particular provision of a statute is part of a single statutory scheme the legislative intention must be gathered from the entire statute rather than from only one part. Of course, a well-recognized counterbalancing rule is that a court must not surmise a legislative intention contrary to the plain language of a statute.
>
> \* \* \* \* \* \*
>
> That which necessarily is implicit in a statute is as much a part of it as that which is expressed. [Citations omitted.]

The Court of Appeals in *Larimore v. American Insurance Company,* 314 Md. 617, 622, 552 A.2d 889 (1989), stated:

> On several occasions recently we have reiterated the principle that " 'where the Legislature has required specified coverages in a particular category of insurance, and has provided for certain exceptions or exclusions to the required coverages, additional exclusions are generally not permitted.' " [Citations omitted.]

See also *Gable v. Colonial Insurance Company of California,* 313 Md. 701, 548 A.2d 135 (1988). The policy in *Larimore* contained an exclusion worded so as to exclude liability coverage for an employee if that employee was "already entitled to compensation through workers' compensation." The Court opined:

Since the General Assembly has extensively considered the relationship between collateral source benefits and the mandatory minimum motor vehicle insurance coverages, and has determined what reductions and exclusions in the compulsory insurance benefits are allowable because of collateral source payments, this Court has been most reluctant to uphold additional set-offs or exclusions.

*Id.* at 624, 552 A.2d 889. *See also Hoffman v. United Services Automobile Association,* 309 Md. 167, 172, 522 A.2d 1320 (1987), ("this mandatory coverage has 'the purpose of providing minimum protection to individuals injured by uninsured motorists.' "); *Nationwide Mutual Insurance Company v. Webb,* 291 Md. 721, 737, 436 A.2d 465 (1981) (UM statutes are intended to allow access to the full statutory minimum "to exactly the same extent as would have been available had the tortfeasor complied with the minimum requirements of the financial responsibility law.")

We said in *Provident General Insurance Co. v. McBride,* 69 Md.App. 497, 505–06, 518 A.2d 468 (1986), that:

[E]very automobile liability insurance policy must provide "uninsured motorist" (UM) coverage. Md.Code (1957, 1986 Repl.Vol.), Article 48A, § 541(c). Section 541(c)(2) provides in pertinent part:

In no case shall the uninsured motorist coverage be less than the coverage afforded a qualified person under Article 48A, §§ 243H and 243–I. However, the insurer may exclude from coverage benefits for:

(i) The named insured or members of his family residing in the household when occupying, or struck as a pedestrian by, an uninsured motor vehicle that is owned by the named insured or a member of his immediate family residing in his household. . . .

We held in *Provident,* that the language of Md.Ann.Code art. 48A, § 541(c)(2)(i) which then stated that an insurer can exclude "the named insured . . . when occupying . . . an uninsured motor vehicle that is owned by the named insured . . ." was broad enough to permit a policy exclusion by

Provident that excluded motor vehicles "owned or furnished or available for ... regular use by the owner."

When construing policy exclusions in respect to Md.Ann. Code art. 48A § 539 benefits, *i.e.*, personal injury protection (hereinafter PIP), we said in *Huntt v. State Farm Mutual Automobile Insurance Company*, 72 Md.App. 189, 195, 527 A.2d 1333, *cert. denied*, 311 Md. 286, 533 A.2d 1307 (1987), discussing our decision in *Provident*, that:

> Given the specific legislative authorization for such an exclusion, we declined "to insert or delete words to ascertain a legislative intention different from [the statute's] clear meaning." *Id.* Although § 544(a) may not expressly authorize a policy provision such as that in the case *sub judice*, we think such a provision is contemplated by the statute's terms. [Bracketed material in original.]

We further held that "[w]hen a policy provision is not in conflict with the statute, that provision will be enforced, the statute's underlying purpose notwithstanding." *Id.* at 194, 527 A.2d 1333.

The language of the statute and the policy mandate coverage for the *named insured* when involved in any accident. At the same time the statute permits an insurer to exclude from coverage an insured when he is injured while using a family vehicle that the insurer has not covered. While it might make otherwise uninsured persons insured, as to non-family vehicles, it does not enlarge the description of insured vehicles as described in the policy. The obvious purpose of the policy exclusion as to uninsured vehicles is to prohibit a person from purchasing insurance for one car only and utilizing that coverage as to other vehicles owned by the insured through the "in any accident" provision of the policy. This type of prohibition is not against public policy. To apply its language as the appellant urges would invite multi-vehicle families to insure only one vehicle. It would play havoc with premium determinations and otherwise be detrimental to the process of providing liability protection to the motorists, and others, of

Maryland. Appellant's interpretation of the clause, if adopted, would be, as we see it, contrary to public policy.

As far as we have been able to determine, the prior cases voiding exclusionary language in respect to uninsured motorist UM coverage and personal injury protection (PIP) have not voided a provision that excludes coverage for a *vehicle* owned by the insured or his spouse which is not insured under the policy.[2]

We feel that the exclusionary language contained in Section 541(c)(2)(i), that "an insurer may exclude from coverage ... the named insured when occupying ... an uninsured motor vehicle that is owned by ... a member of his immediate family," was intended to permit exclusion of coverage for other family-owned vehicles not insured under the applicable policy. To permit such an exclusion will encourage families to obtain coverage for *all* of their vehicles and thus maximize compliance with the purpose of the statute.

The Court of Appeals said in *Tucker v. Fireman's Fund Insurance Company*, 308 Md. 69, 73, 75, 517 A.2d 730 (1986), that:

> In construing the meaning of a word in a statute, the cardinal rule is to ascertain and carry out the real legislative intention.
>
> \*    \*    \*    \*    \*    \*
>
> We, of course, recognize the legislative right to draw lines distinguishing between covered and uncovered persons. We also recognize the rule that where a statute is plainly susceptible of more than one meaning and thus contains an ambiguity, courts consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of the enactment. In such circumstances, the court, in seeking to ascertain legislative intent, may consider the

---

**2.** *Provident,* 69 Md.App. 497, 518 A.2d 468, appears to accept such an exclusion.

consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense. [Citations omitted.]

To ascribe the meaning, of the word "uninsured," thrust upon us by appellant to the language of the statute would, in the context of this case, put form over substance. As we see it, the legislature was permitting an insurer to exclude other vehicles of an insured that were not insured under the policy at issue. The unusual circumstance of the Powells in being recently married with the retention of the wife's pre-marriage policy on her car, does not change the fact that, as to her husband's policy, her automobile was not an insured vehicle.

We think that the doctrine of avoiding absurd results is also applicable. The policy at issue in *Howell*, 305 Md. at 442–43, 505 A.2d 109, covered 19 separate vehicles. The issue before the court was the existence (or lack thereof) of intra-policy "stacking" of coverage. After referring to the possibility of absurd results mentioned in J. Appleman, *Insurance Law and Practice* § 5106 (1981), the Court stated:

> Views similar to that expressed by Appleman relative to the high exposure for a small premium have been expressed in [several other cases]. The Kentucky court in *Ohio Cas. Ins. Co. [v. Stanfield]*, 581 S.W.2d [555] at 559 [Ky.1979], quoted reasoning to that effect.
>
> A total of 19 vehicles were insured. Applying the mathematics mentioned by Appleman and certain of the cases we would find that if Howell's contentions were to prevail there would be an exposure for each vehicle of $950,000 (19 × $50,000). If all 19 vehicles were on the road at one time the total exposure of the insurance company would be $18,050,000 (19 × $950,000). All of this coverage would be available for a premium of $76. This would be a truly absurd result.

We see no ambiguity notwithstanding arguments of Howell to the contrary. If, however, there were an ambi-

guity, the doctrine of avoiding absurd results would prevail. . . .

To hold as appellant also urges, *i.e.*, that his wife's vehicle was not *uninsured* because it was covered under another policy, would be to permit an owner to buy excess coverage under one policy for one vehicle at a relatively small premium and coverage under a separate policy for his other vehicles at a lesser cost, and have the excess coverage of the first policy apply to the vehicles covered under the subsequent policies.[3]

The insurer in the case at bar contends that the insurance policy's exclusion of an insured injured while occupying an uninsured motor vehicle owned by a named insured or his spouse is nothing more than a narrowing of the insurer's liability in a manner not inconsistent with statutory requirements. We agree. In *Pennsylvania National Mutual Casualty Insurance Company v. Gartelman*, 288 Md. 151, 158, 416 A.2d 734 (1980), the insurer asserted:

The insurer contends that this exclusion, approved by the Commissioner of Insurance, is, in effect, identical to that contained in § 243H(a)(1)(i). It maintains that § 243H(a)(1)(i) must be construed to deny coverage, not only to an insured operating an uninsured motor vehicle which he himself owns, but also to all other persons insured under the policy when operating an uninsured motor vehicle owned by an insured other than himself. It points out that unless the statute is so construed, an insured could own several motor vehicles, insure only one, and nevertheless obtain UM coverage under the policy for other insureds, even when they are operating one of the uninsured motor vehicles. Under such circumstances, the insurer would be unable to ascertain the risk which it was undertaking because it would not know the number of vehicles to be covered. The insurer asserts that the

---

**3.** Appellant's contention that *Howell's* applicability is *an issue* on appeal is incongruous. In any event, its holding is relevant. We decline to further address it as a separate issue.

Legislature could not have intended such an anomalous result. . . .

*    *    *    *    *    *

Applying these principles to the instant case produces a clear result. Section 243H(a)(1)(i) expressly excludes from coverage a claimant operating an uninsured motor vehicle which he himself owns. No express exclusion is provided for a claimant operating an uninsured motor vehicle owned by an insured other than himself. Thus the plain and unambiguous language of the statute establishes that only a claimant operating an uninsured motor vehicle which he himself owns can be excluded from UM coverage. . . .

In construing the exclusionary language of that policy, the Court was addressing § 243H(a)(1)(i) of Maryland Code art. 48A, pertaining to the Unsatisfied Claim and Judgment Fund. It was not addressing the then uninsured motorists provisions of Section 541, because the UM statute extant in 1979–1980 mentioned no exclusions.

It is significant that the exclusionary language of present Art. 48A, § 541 was amended into the statute after *Pennsylvania* was decided. The Legislature is presumed to be aware of the *Pennsylvania* holding. Thus, when the statutory exclusionary language now found in the statute provides for an exclusion in respect to vehicles that are owned by the named insured *or members of his immediate family,* we hold that it was the intention of the Legislature that the exclusion extend to vehicles owned by a named insured's spouse that are not covered under the policy at issue. Thus, the exclusion in this policy is contemplated by, not in conflict with, the statute.

We recently decided a somewhat similar case involving two different policies and two different vehicles. The appellant in that case was insured by the Maryland Automobile Insurance Fund (MAIF), and his UM limits were $20,000/$40,000. His wife's employer, as a benefit of her employment, caused her BMW to be insured under the

employer's policy with Erie. The employer's policy had UM coverage of $100,000/$300,000. The appellant was injured by an uninsured motorist while he was a pedestrian standing alongside his car. He made his UM claim against Erie instead of MAIF for obvious reasons. We stated:

> In appellant's view, a proper construction of the Erie policy would afford coverage to the spouse of an owner of a vehicle covered by a policy of general liability insurance. As appellant sees it, the owners of each of the five cars listed in the Erie policy have both PIP and UM coverage that includes their spouses and any relatives residing in their household.

*Schuler v. Erie Insurance Exchange,* 81 Md.App. 499, 502, 568 A.2d 873 (1990). We distinguished the earlier Court of Appeals case of *Gartelman, supra,* and the District Court case of *Parsons v. Erie Insurance Group,* 569 F.Supp. 572 (D.Md.1983), stating:

> Unquestionably, the *Gartelman* and *Parsons* cases reveal a legislative policy designed to insure fiscal responsibility by those persons owning and operating motor vehicles in Maryland. Md.Ann.Code, Art. 48A, §§ 243A–243N, 538–47; Transportation Article, § 17–101, *et seq.* Therefore, while Erie's contention that it may select those whom it chooses to cover has a certain facial appeal, it is not necessarily correct.

*Id.* at 504–05, 568 A.2d 873.

> The appellant, therefore, is not covered as either the subscriber or as the named insured. Neither can he qualify under ... "relatives".... "Relative" is defined ... as a person ... who resides in the insured's household, *and appellant's accident did not involve the use of the BMW* [the vehicle insured under the policy].

*Id.* at 507, 568 A.2d 873. (Emphasis added.)

We hold that the exclusion at issue, contained in appellant's policy, is not void as being in conflict with the Md.Ann.Code art. 48A, § 541 (1979) or the underlying public policy upon which the statute is based.

Holding as we have, we need not address appellant's reliance on *Nationwide Mutual Ins. Co. v. Webb,* 291 Md. 721, 436 A.2d 465 (1981), which invalidated a consent to sue clause, or *Reese v. State Farm Mutual Automobile Insurance Company,* 285 Md. 548, 403 A.2d 1229 (1979), which invalidated a clause in a policy requiring the securing of judgment against the tortfeasor prior to operation of the policy UM provision. Nor do we deem necessary any discussion of the "phantom" car case of *State Farm Mutual Automobile Insurance Company v. Maryland Automobile Insurance Fund,* 277 Md. 602, 356 A.2d 560 (1976), which invalidated a policy clause excluding UM coverage unless there had been physical contact with an unidentified vehicle. *See also Lee v. Wheeler,* 310 Md. 233, 528 A.2d 912 (1987), and *Fireman's Fund Insurance Company v. Bragg,* 76 Md.App. 709, 548 A.2d 151 (1988).

We further note that even if we were, *arguendo,* to adopt appellant's public policy arguments the outcome would not change. If the policy exclusion at issue were to be determined to be in conflict with the statute, it would only be in conflict as to the minimum required coverage, i.e., $20,000/$40,000. As to any excess coverage it would be a valid exclusion.[4] Were we, on grounds of public policy, to hold the clause invalid as applying to the excess UM coverage under the appellant's policy, we would be stating, by reverse inference, that an insurer could not exclude statutory unrequired coverage. In essence, we would be increasing the minimum required coverage by judicial fiat. The Court of Appeals stated in *Yarmuth v. Government*

---

**4.** *But see Aetna Casualty & Surety Company v. Souras,* 78 Md.App. 71, 552 A.2d 908 (1989), in which we held that where a victim's UM coverage exceeded the minimum amount of coverage and the tortfeasor's vehicle had a lesser amount of coverage, as to the excess coverage of the owners policy, the tortfeasor's vehicle was uninsured. In so stating, we were recognizing that the statute permits and encourages parties to contract for UM coverage in excess of the statutorily mandated minimum, and that such excess coverage will be enforced. We were not construing the validity of exclusionary clauses that do not violate public policy or statutory prohibitions.

*Employees Insurance Company*, 286 Md. 256, 407 A.2d 315 (1979), while construing the language of Md.Ann.Code art. 48A, § 543(a) relative to duplicative or supplemental coverage relating to UM coverage:

> In enacting § 541(c) and § 543(a), the General Assembly has legislated a public policy consistent with the "Other Insurance" clause in the GEICO policy. *Contrary to the appellants' position, this clause does not conflict with § 541(c), as it does not operate to reduce the insured's coverage below the statutory minimum.* The interpretation of § 543(a), as urged by appellants, would result in an unwarranted judicial enactment of an amount of uninsured motorist coverage that is greater than the minimum statutory limits as specified by the General Assembly. This would give a victim of an uninsured motorist greater insurance protection than would be available if he had been injured by an insured motorist having only the minimum required liability insurance.

*Id.* at 264–65, 407 A.2d 315. (Emphasis added, footnote omitted.) *See also Traveler's Insurance Company v. Benton*, 278 Md. 542, 365 A.2d 1000 (1976). The Court of Appeals adopted the majority view that such prohibited clauses were prohibited only as to the prescribed coverage and not to coverage in excess of the required minimum. That Court in a more recent case stated, when interpreting the effect of "household exclusions," that:

> "Generally, it is held that exclusions in liability insurance policies are valid and enforceable as to amounts exceeding coverage required in financial responsibility laws.... We adhere to this general rule and find the exclusions void only as to the minimum coverage required by statute. The ... A[ct] does not preclude application of the ... exclusions ... to motor vehicle liability insurance coverage in excess of statutorily required limits."

To this list we add a brace of decisions that have reached the same result in cases not involving the "household exclusion" but a provision analogous to it so far as

enforceability above statutory minimum coverage is concerned. . . .

We align ourselves with this majority. As a general rule, parties are free to contract as they wish. *Gardiner v. Gardiner*, 200 Md. 233, 88 A.2d 481 (1952). A contractual provision that violates public policy is invalid, but only to the extent of the conflict between the stated public policy and the contractual provision.

*State Farm v. Nationwide*, 307 Md. at 642–43, 516 A.2d 586. (Citations omitted, footnotes omitted, bracketed material in original.) *See also Walther v. Allstate Insurance Company*, 83 Md.App. 405, 575 A.2d 339 (1990), where Chief Judge Gilbert, citing *State Farm v. Nationwide*, for the Court held: "Insurers have a right to limit their liability and to impose whatever condition they please in the policy so long as neither the limitation on liability nor the condition contravenes a statutory inhibition or the State's public policy." *Id.* at 411, 575 A.2d 339.

Therefore, even if invalid as to the minimum coverage, the exclusion in the policy in the case at bar would be valid as to the excess coverage. The exclusion at issue in the husband's policy is neither prohibited, nor contrary to public policy. Even if prohibited as to the minimum, and we have held that it is not, it would be applicable to foreclose any recovery of amounts in excess of that minimum.

Having determined that Judge Perry was correct, we affirm.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.