REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2496

September Term, 2014

_____

MARYLAND INSURANCE ADMINISTRATION

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

_____

Berger,
Reed,
Rodowsky, Lawrence F.
  (Retired, Specially Assigned),

JJ.

_____

Opinion by Rodowsky, J.

_____

Filed: June 1, 2016
*Judge Kevin F. Arthur did not participate, pursuant
to Md. Rule 8-605.1, in the Court's decision to report
this opinion.

At issue here are the applicability of the personal injury protection (PIP) coverage provisions and the validity of the owned but uninsured exclusion from PIP coverage in an automobile liability policy issued by the appellee, State Farm Mutual Automobile Insurance Company (State Farm) to its named insured, Alaskan Bundue-Conteh (the Claimant). These proceedings arise on the Claimant's complaint to the Maryland Insurance Administration (MIA) that State Farm had denied his claim for PIP benefits. Applying certain trade practice enforcement provisions, MIA agreed with the Claimant on the merits and, in final agency action, imposed a penalty on State Farm by ordering payment of the benefits with statutory interest. In an action for judicial review, the Circuit Court for Baltimore City reversed. This appeal followed. For the reasons set forth below, we shall affirm the circuit court.

The facts are undisputed. The Claimant was the owner of two automobiles. His 1997 Jeep Grand Cherokee was insured by State Farm under an automobile liability policy that included PIP coverage. He also owned a 2006 Ford Crown Victoria that he drove as a taxicab. It was insured for liability with Amalgamated Casualty Insurance Co. under a policy that did not contain PIP coverage. On November 14, 2011, while Claimant was occupying his taxicab, it was rear-ended by another automobile, causing Claimant personal injuries. Claimant is seeking a recovery of PIP benefits under a policy covering an owned motor vehicle that he was not occupying at the time of the accident. That State Farm policy contains the exclusion from PIP coverage that is set forth below:

"**Exclusions**
"**THERE IS NO COVERAGE:**

**....**

"**3.    FOR YOU OR ANY RESIDENT RELATIVE WHILE OCCUPYING A MOTOR VEHICLE OWNED BY YOU OR ANY RESIDENT RELATIVE AND WHICH IS NOT INSURED UNDER THE LIABILITY COVERAGE OF THIS POLICY.**"

There are a number of provisions of the Insurance Article of the Maryland Code that are relied upon in the arguments of the parties.  Some of those statutes are set forth below.

Unless otherwise noted, all references are to sections of Maryland Code (1997, 2011 Repl. Vol.), Article, "Insurance," Title 19, "Property and Casualty Insurance," Subtitle 5, "Motor Vehicle Insurance – Primary Coverage."

"**§ 19-501.  Definitions.**
        "(a) *In general*. – In this subtitle, the following words have the meanings indicated.
        "(b) *Motor Vehicle*. – ...
                "(2) 'Motor vehicle' does not include:
                        ....
                        "(ii)  a taxicab as defined in § 11-165 of the Transportation Article[.]
        "(c) *Motor vehicle accident*. – (1) 'Motor vehicle accident' means an occurrence involving a motor vehicle that results in damage to property or injury to a person."

"**§ 19-505.  Personal injury protection coverage – In general.**
        "(a) *Coverage required*. – Unless waived in accordance with § 19-506 of this subtitle, each insurer that issues, sells, or delivers a motor vehicle liability insurance policy in the State shall provide coverage for the medical, hospital, and disability benefits described in this section for each of the following individuals:
                "(1) ....

-2-

"(i) the first named insured, and any family member of the first named insured who resides in the first named insured's household, who is injured in any motor vehicle accident, including an accident that involves an uninsured motor vehicle or a motor vehicle the identity of which cannot be ascertained[.]

....

"(c) *Exclusions.* – (1) An insurer may exclude from the coverage described in this section benefits for:

....

"(ii) the named insured or a family member of the named insured who resides in the named insured's household for an injury that occurs while the named insured or family member is occupying an uninsured motor vehicle owned by:

"1. the named insured[.]"

"**§ 19-513. Limitations on recovery of benefits.**

....

"(d) *Payment of benefits – Coverage under subtitle not in effect.* – (1) The insurer under a policy that contains the coverages described in §§ 19-505 and 19-509 of this subtitle shall pay the benefits described in §§ 19-505 and 19-509 to an individual insured under the policy who is injured in a motor vehicle accident:

"(i) while occupying a motor vehicle for which the coverages described in §§ 19-505 and 19-509 are not in effect[.]"

MIA held that State Farm violated §§ 19-505 and 19-513.

## Standard of Review

Where, as here, the facts are undisputed, our review of the agency decision is "limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determining if the administrative agency's decision is premised upon an erroneous conclusion of law." *United Parcel Serv., Inc. v. People's Counsel*, 336 Md. 569, 576, 650 A.2d 226, 230 (1994). Further, the expertise of the agency

-3-

in interpreting the statute which it administers should be respected. *Board of Physician Quality Assurance v. Banks*, 354 Md. 59, 69, 729 A.2d 376, 381 (1999).

## Questions Presented

MIA makes two submissions which we have converted into questions presented.

> I. Does the plain meaning of the statutory provisions relating to mandatory PIP coverage require that State Farm pay PIP benefits to its insured?

> II. Did MIA correctly determine that the owned but uninsured exclusion did not permit State Farm to deny PIP benefits to its Insured?

## Discussion

## I

Much of the ground covered by the first issue has been plowed in *Nasseri v. GEICO General Ins. Co.*, 390 Md. 188, 888 A.2d 284 (2005). There, the named insured under a GEICO automobile policy, covering the insured's private motor vehicle, was injured in an automobile collision while driving a taxicab that was owned by a third party. The GEICO policy included PIP coverage but the policy on the taxicab did not. GEICO denied the insured's claim for PIP benefits, relying on the policy's exclusion for injuries in an uninsured automobile which was available for the regular use of the insured. The Court held that PIP benefits must be paid by GEICO. Essentially, the Court said that, unlike automobile liability coverage that follows the insured vehicle, PIP coverage follows an insured individual.[1]

---

[1]The Court in *Nasseri* said:

(continued...)

-4-

PIP coverage was not negated by the exclusion relied upon by GEICO because the exclusion was broader than the authorizing statute, § 19-505(c)(1)(ii)1, which required the vehicle occupied by the insured at the time of the collision to be owned by him, as opposed to being available for the insured's regular use.

Despite *Nasseri*, MIA argues that, because a taxicab is excluded from the definition of "motor vehicle," the Claimant was not occupying a motor vehicle within the meaning of § 19-505(c)(1)(ii), the authorization for the owned but uninsured exclusion from PIP. The argument undertakes to prove too much.

_____

[1](...continued)

> "The language of the Insurance Article, as well as numerous opinions by this Court, make it clear that an insured, who has PIP coverage under a policy on the insured's motor vehicle, and who is injured in an accident while occupying a different motor vehicle owned by someone else, is ordinarily entitled to PIP coverage under the policy on the insured's vehicle. If the vehicle occupied by the insured also has PIP coverage, that coverage will be primary and the coverage under the policy on the insured's vehicle will be secondary. If the occupied vehicle has no PIP coverage, the coverage under the insured's policy will be primary. *See, e.g., Bishop v. State Farm Mutual Auto Insurance*, 360 Md. 225, 236-238, 757 A.2d 783[, 789-790] (2000); *MAIF v. Perry*, 356 Md. 668, 671-672, 676-677, 741 A.2d 1114, 1115-1116, 1118-1119 (1999); *Travelers Ins. Co. v. Benton*, 278 Md. 542, 543, 365 A.2d 1000, 1002 (1976) (The statute 'provides, with respect to a person insured under a policy providing PIP coverage who is injured in an accident while occupying a motor vehicle for which such coverage is not in effect, that the PIP benefits shall be payable by the injured party's insurer providing such coverage') (internal quotation marks omitted). *See also Pennsylvania Nat'l Mutual Casualty Insurance Company v. Gartelman*, 288 Md. 151, 154-157, 416 A.2d 734, 736-739 (1980)."

390 Md. at 196, 888 A.2d at 288.

MIA seems to argue that, because the authorization permits exclusion from PIP of injuries to certain persons "occupying an [owned,] uninsured motor vehicle," and because a taxicab is, by definition, not a motor vehicle, the exclusion cannot apply. *Nasseri*, however, explained the purpose of the definition. It was enacted by Ch. 655 of the Acts of 1977,

> "'[for] the purpose of exempting certain vehicles, as defined in the Vehicle Laws, from certain required primary coverage insurance provisions; and subdividing a section.'
>
> "Consequently, the purpose of Ch. 655 was simply to provide that the compulsory automobile liability insurance policies on taxicabs and certain other vehicles did not have to contain policy provisions for PIP and some other statutory coverages. The purpose was not to negate required PIP and other required coverages, under policies on all other types of motor vehicles, whenever a taxicab happened to be involved in an accident with another type of motor vehicle."

390 Md. at 195-96, 888 A.2d at 288.

The definitional statute tells us that a taxicab is not required to carry PIP coverage as primary insurance for taxicab occupants, but it does not tell us whether the taxicab occupant's policy does or does not provide secondary coverage.

MIA similarly contends that Claimant was not occupying a taxicab that was "uninsured" within the meaning of § 19-505(c)(1)(ii) because the taxicab was covered for liability in at least the minimum amounts required by law. In this respect, the agency's opinion looked to, and relied heavily upon, § 19-509(a) which defines an "uninsured motor

vehicle." Section 19-509 deals with uninsured motorist coverage.[2] This definition applies only to § 19-509 and has no effect on the exclusion from PIP authorized by § 19-505(c)(1). In the context of § 19-505(c)(1), "uninsured" refers to uninsured for PIP which ordinarily (and absent express waiver) will manifest itself in the automobile liability policy of the claimant by the absence of the owned vehicle from the declaration of vehicles insured against liability.

As recognized in *Nasseri*, PIP coverage follows an insured, even into a taxicab, principally because of two statutes, each of which uses the term "motor vehicle" as an element of coverage. The requirement for a motor vehicle liability insurer to provide PIP, found in § 19-505(a), applies to "an insured who is injured in any motor vehicle accident, including an accident that involves an uninsured motor vehicle." *Nasseri* held that the claimant there was involved in a motor vehicle accident, because the other vehicle was not

---

[2]Section 19-509(a) reads:

"(a) *'Uninsured motor vehicle' defined.* – In this section, 'uninsured motor vehicle' means a motor vehicle:
"(1) the ownership, maintenance, or use of which has resulted in the bodily injury or death of an insured; and
"(2) for which the sum of the limits of liability under all valid and collectible liability insurance policies, bonds, and securities applicable to bodily injury or death:
"(i) is less than the amount of coverage provided under this section; or
"(ii) has been reduced by payment to other persons of claims arising from the same occurrence to an amount less than the amount of coverage provided under this section."

-7-

a taxicab, 390 Md. at 193, 888 A.2d at 287, and the claimant-occupied taxicab was an "uninsured [for PIP] motor vehicle." *Id.* Similarly, § 19-513(d)(1)(i) requires a PIP insurer to pay those benefits "to an individual insured under the policy who is injured in a motor vehicle accident ... while occupying a motor vehicle for which [PIP] coverages are not in effect."

## II

Having determined in *Nasseri* that the claimant's driving a taxicab was not a valid basis for denying PIP, the Court nevertheless was required to decide whether the scope of the coverage was restricted by an authorized exclusion. In *Nasseri*, the exclusion was unauthorized (policy's "regular use" scope broader than statute's "owned" scope).

Here, MIA asserts that the Claimant "was not occupying an uninsured motor vehicle because his taxicab had the required vehicle insurance." But, the taxicab in *Nasseri* also had the required (liability) insurance. That did not shortcut the need for the Court to analyze the PIP exclusion in the policy on which the PIP denial was based against the statutorily permissible exclusions.

While we recognize that MIA's opinion on the correct interpretation of the statutes it administers is entitled to some deference, we conclude on de novo review of the issue of law before us that MIA has not given effect to the legislative intent. The history of this issue begins with *Pennsylvania Nat'l Casualty Ins. Co. v. Gartelman*, 288 Md. 151, 416 A.2d 734 (1980).

The automobile policy in that case included an owned but uninsured exclusion applicable to PIP and to uninsured motorist coverages. *Gartelman* pointed out that the statutes at that time did not authorize such exclusions. In response, the General Assembly enacted Chapter 573 of the Acts of 1982, at the urging of the insurance industry. *See Nasseri*, 390 Md. at 200 n.11, 888 A.2d at 291 n.11. Chapter 573 authorized an owned but uninsured exclusion for uninsured motorist coverage as Maryland Code (1957, 1986 Repl. Vol.), Article 48A, § 541(c)(1), today § 19-509(f)(1) and a similarly worded exclusion for PIP coverage as Maryland Code (1957, 1986 Repl. Vol.), Article 48A, § 545(c), today § 19-505(c)(1)(ii).[3]

Maryland appellate courts have sustained applications of the uninsured/underinsured motorist (UM/UIM) exclusion. *Government Employees Ins. Co. v. Comer*, 419 Md. 89, 18 A.3d 830 (2011), involved a claimant who incurred over $200,000 in medical expenses due to injuries suffered in an accident on his motorcycle. The tortfeasor had $100,000 of liability coverage and the claimant's policy on his motorcycle provided an additional $50,000

---

[3]Section 19-509(f)(1) reads:

"(f) *Exclusions.* – An insurer may exclude from the uninsured motorist coverage required by this section benefits for:
"(1) the named insured or a family member of the named insured who resides in the named insured's household for an injury that occurs when the named insured or family member is occupying or is struck as a pedestrian by an uninsured motor vehicle that is owned by the named insured or an immediate family member of the named insured who resides in the named insured's household[.]"

in UM/UIM. A policy on an automobile owned by the claimant's father, in whose household the claimant resided, had single limit UM/UIM coverage of $300,000. The claimant sought a judgment declaring that, as an insured under his father's policy, he was entitled to UM/UIM benefits, although his motorcycle was not insured under the father's policy. The father's policy contained the following UM/UIM exclusion:

> "Bodily injury sustained by an insured while occupying a motor vehicle owned by an insured and not described in the declarations and not covered by the bodily injury and property damage liability coverage of this policy is not covered." (Emphasis omitted).

The Court of Appeals reversed a judgment in favor of the claimant, despite the general language in the policy affording coverage, explaining:

> "Comer's and the Circuit Court's reliance upon the basic uninsured/underinsured coverage provision, and the paragraph dealing with primary/excess insurance, is misplaced. These two provisions, standing alone, may well indicate excess coverage for Comer under the GEICO policy. The two provisions, however, do not stand alone. The nature of an exclusion, dealing with a more specific circumstance, is to modify, or create an exception to, the broader coverage provisions. If the two coverage provisions of the GEICO policy did not arguably cover Comer's claim, there would be no need to consider any exclusions."

*Id.* at 95, 18 A.3d at 833.

The Court held that "[t]he exclusion is not ambiguous and clearly precludes coverage of Comer's claim under the GEICO policy." *Id.* at 96, 18 A.3d at 834. Section 19-509(f)(1) authorized the exclusion. *Id.* at 97-98, 18 A.3d at 835. One of the rationales on which it is bottomed is set forth below.

-10-

"One purpose of exclusion 4 in the GEICO policy, as well as a purpose of § 19-509(f)(1), is obviously to prevent a family, owning several motor vehicles, from insuring only one or two of them with an insurer, leaving the other vehicles uninsured, or underinsured under a different policy, and being able to claim uninsured or underinsured motorist benefits from the first insurer even though no premium was paid to the first insurer for coverage of the other vehicles. An interpretation of the Insurance Code that would allow this would be unreasonable."

*Id.* at 98, 18 A.3d at 835.

This Court had reached the same conclusion on similar facts in *Powell v. State Farm Ins. Co.*, 86 Md. App. 98, 585 A.2d 286 (1991). We said that present § 19-509(f)(1) recognized an owned but uninsured exclusion for UM/UIM because,

"[t]o hold as appellant also urges, i.e., that his wife's vehicle was not *uninsured* because it was covered under another policy, would be to permit an owner to buy excess coverage under one policy for one vehicle at a relatively small premium and coverage under a separate policy for his other vehicles at a lesser cost, and have the excess coverage of the first policy apply to the vehicles covered under the subsequent policies."

*Id.* at 110, 585 A.2d at 291. The Court of Appeals, in *Comer*, concurred with our opinion in *Powell* and quoted, with favor, the above language from *Powell*.

MIA has not presented us with any principled distinction between the statutory authorization of an owned but uninsured exclusion from UM/UIM coverage and the statutory authorization for an owned but uninsured exclusion from PIP coverage. Nor do we discern any, particularly in view of the lock-step authorization with which the General Assembly has treated the two exclusions. For these reasons, we affirm.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**